No. 21-13458

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

MGFB PROPERTIES INC., FLORA-BAMA MANAGEMENT, LLC, AND
FLORA-BAMA OLD S.A.L.T.S., INC.,

*Plaintiffs-Appellants*,

v.

VIACOMCBS INC., 495 PRODUCTIONS HOLDINGS LLC, AND 495
PRODUCTIONS SERVICES, LLC,

*Defendants-Appellees*.

---

Appeal from the United States District Court for the
Northern District of Florida

Case No. 5:19cv257-RH-MJF

---

## BRIEF OF *AMICUS CURIAE*
## MOTION PICTURE ASSOCIATION, INC.
## IN SUPPORT OF DEFENDANTS-APPELLEES AND AFFIRMANCE

---

Lynn M. Jordan∗
David M. Kelly∗
KELLY IP, LLP
1300 19th St., NW
Washington, DC 20036
(202) 808-3570

Deanna K. Shullman
SHULLMAN FUGATE PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411
(561) 429-3619

*Attorneys for Amicus Curiae*

---

∗ Eleventh Circuit admission pending.

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Local Rule 26.1-2, amicus curiae Motion Picture Association, Inc. provides the following list of persons and entities that have or may have an interest in the outcome of this case and have not been identified in earlier-filed briefs:

- Jordan, Lynn – Counsel for Amicus Curiae

- Kelly, David – Counsel for Amicus Curiae

- Kelly IP, LLP – law firm for Amicus Curiae

- Shullman, Deanna K. - Counsel for Amicus Curiae

- Shullman Fugate PLLC - Counsel for Amicus Curiae

- Motion Picture Association, Inc. – Amicus Curiae

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel certifies that amicus curiae the Motion Picture Association, Inc. states that it has no parent corporation and that no publicly-held company owns 10% or more of its stock.

Date:  March 11, 2022

/s/Deanna K. Shullman
Deanna K. Shullman
Shullman Fugate PLLC

*Attorney for Amicus Curiae*

C-1

# Contents

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ............................................................................C-1

STATEMENT OF INTEREST ..................................................................1

STATEMENT OF COMPLIANCE WITH RULE 29(a) ..........................3

STATEMENT OF ISSUES ......................................................................3

SUMMARY OF ARGUMENT ................................................................3

ARGUMENT ..........................................................................................6

I.   *Rogers v. Grimaldi* Jurisprudence Recognizes the Importance of Not Subjecting Titles to the Traditional Likelihood-of-Confusion Test Because That Test Does Not Adequately Protect First Amendment Interests..............................6

II.  The District Court Improperly Classified Appellant's Use of FLORA-BAMA for a Lounge and Entertainment Complex as a Title and Then Improperly Held *Rogers*' Two-Part Test Inapplicable ......................................................8

III. The District Court's Rejection of the Predictable Two-Part Test in Favor of Subjectively "Balancing" Trademark Interests and the First Amendment Is Likely To Chill Speech ..................................................................11

   A.  Courts Are Generally Reluctant to Determine Likelihood of Confusion on Motions to Dismiss ..................................................................11

   B.  Balancing Tests Are Not Predictable in Result ...........................14

CONCLUSION ......................................................................................16

CERTIFICATE OF COMPLIANCE ......................................................18

CERTIFICATE OF SERVICE ...............................................................19

i

# Table of Citations

## Cases

*Caryn Mandabach Prods. Ltd. v. Sadlers Brewhouse Ltd.*, No. CV 20-10220, 2021 WL 2497928 (C.D. Cal. May 19, 2021) ..............................................................10

*E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095 (9th Cir. 2008) ....13

*ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915 (6th Cir. 2003) ...............................7

*Hidden City Phila. v. ABC, Inc.*, No. 18-65, 2019 WL 1003637 (E.D. Pa. Mar. 1, 2019) ...................................................................................................................7

*Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495 (1952). ...............................................8

*Lemme v. NBC*, 472 F. Supp. 2d 433 (E.D.N.Y. 2007). ................................... 11, 12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)........14

*Mattel, Inc. v. MCA Records*, 296 F.3d 894 (9th Cir. 2002) ....................................7

*Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402 (S.D.N.Y. 2006) ..................................................................................................................11

*MGFB Props., Inc. v. Viacom Inc.*, No. 19cv257, 2019 WL 8096508 (N.D. Fla. Oct. 21, 2019) .....................................................................................................12

*MGFB Props., Inc. v. ViacomCBS Inc.*, No. 19cv257, 2021 WL 4843905 (N.D. Fla. Sept. 22, 2021) ............................................................................. 4, 8, 13, 14

*Phoenix Ent. Partners, LLC v. George & Wendy's Tropical Grill, LLC*, No. 16-cv-852, 2017 WL 881826 (M.D. Fla. Mar. 6, 2017) ................................................11

*Pyure Brands, LLC v. Nascent Health Science LLC*, No. 18-cv-23357, 2019 WL 7945226 (S.D. Fla. Mar. 4, 2019) ........................................................................11

*Rebellion Devs. Ltd. v. Stardock Ent., Inc.*, No. 12-12805, 2013 U.S. Dist. LEXIS 66131 (E.D. Mich. May 9, 2013)..................................................................... 5, 11

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989)........................................... passim

*Seale v. Gramercy Pictures*, 949 F. Supp. 331 (E.D. Pa. 1996)................................7

*Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*, 683 F.3d 1266 (11th Cir. 2012) ....4, 7

*Wash. Post Co. v. Keogh*, 365 F.2d 965 (D.C. Cir. 1966) ................................ 13, 14

*Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658 (5th Cir. 2000) ........7

*Zeltiq Aesthetics, Inc. v. Pobra Enters., LLC*, No. 16-cv-792, 2017 WL 238138
  (M.D. Fla. Jan. 19, 2017) ........................................................................................11

## Statutes

15 U.S.C. § 1127 ........................................................................................................8

Fed. R. App. P. 29(a)(2) .............................................................................................1

Fed. R. App. P. 29(a)(4)(E) ........................................................................................1

## Other Authorities

H.R. Rep. No. 116-645 (2020) ....................................................................................5

William McGeveran, *The Trademark Fair Use Reform Act*, 90 B.U.L. Rev. 2267
  (2010) .....................................................................................................................14

## STATEMENT OF INTEREST

*Amicus curiae* the Motion Picture Association, Inc. ("the MPA") respectfully submits this brief in support of Defendants-Appellees ("ViacomCBS") with the consent of all parties. *See* Fed. R. App. P. 29(a)(2). The MPA is a not-for-profit trade association founded in 1922 to address issues of concern to the film industry. Its members are Netflix Studios, LLC, Walt Disney Studios Motion Pictures, Paramount Pictures Corporation,[1] Sony Pictures Entertainment Inc., Universal City Studios LLC, and Warner Bros. Entertainment Inc. These entities and their affiliates produce and distribute a significant percentage of the filmed entertainment in the United States through the theatrical and home entertainment market. The MPA's mission today includes safeguarding creativity (including free expression and copyright), fostering innovation, driving economic growth for the industry, and advancing diversity, equality, and inclusion in America's creative economy.

A film's title is an integral part of the film. It prepares the viewer. It provides context. As the Second Circuit noted in the watershed case at issue here, "[f]ilmmakers and authors frequently rely on word-play, ambiguity, irony, and allusion in titling their works" and "their interest in freedom of artistic expression is shared by their audience . . . [because] the subtleties of a title can enrich a reader's

---

[1] Defendant-Appellee ViacomCBS, Inc. (which became Paramount Global effective February 16, 2022) is the parent company of Paramount Pictures Corporation. Paramount Pictures Corporation is a member of the MPA.

or a viewer's understanding of a work."[2]

The MPA's members use titles to communicate with their audiences about their creative works. A title typically is the first piece of information that consumers receive about a work, and it serves as a public statement of a creative work's expressive content. The MPA and its members thus have a substantial interest in the test this Court uses to secure creators' First Amendment rights of free expression, including in their choice of titles, against encroachment by overreaching Lanham Act claims. At the same time, the MPA's members also have significant expertise and experience enforcing trademarks in cases where third-party infringement leads to consumer confusion in the marketplace. The MPA's members are owners of some of the most valuable trademarks in the world. The MPA therefore is well-positioned to provide the Court with a unique and balanced perspective on the proper way to ensure that applications of trademark law in cases involving titles of expressive works do not violate the First Amendment.

While the district court was correct in recognizing *appellees*' First Amendment rights in its title, by categorizing appellants' commercial trademark as a title, rather than an ordinary trademark, it gave a heightened level of protection to commercial speech that is inconsistent with both the First Amendment and the Lanham Act and cannot be the law. This Court therefore should reject the district

---

[2] *Rogers v. Grimaldi,* 875 F.2d 994, 998 (2d Cir. 1989).

court's categorization of the mark as a title, which led to its flawed holding that the two-part test articulated in *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989), and adopted by courts around the country, does not apply. To do otherwise is likely to chill protected expression by making it impossible to predict how these cases will be resolved, both because they will be jurisdiction dependent and because of the unknowable nature of how a court will subjectively "balance" interests.

## STATEMENT OF COMPLIANCE WITH RULE 29(a)

No party or party's counsel authored this brief in whole or in part; no party or party's counsel contributed money to fund the preparation or submission of this brief; and no other person except *amici curiae*, their members, or their counsel contributed money intended to fund the preparation or submission of this brief. Both parties have consented to the filing of this brief.

## STATEMENT OF ISSUES

1. Did the district court erroneously find plaintiffs' mark to be a title, rather than a commercial trademark, bestowing it with an unwarranted level of constitutional protection?

2. Does the two-prong test set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) govern appellants' claims?

## SUMMARY OF ARGUMENT

The district court properly categorized the instant case in its preamble: "the contest is between the owners of the regionally famous *Flora-Bama* lounge and

3

entertainment complex and the later-created, nationally broadcast television series *MTV Floribama Shore*."[3] There is no dispute that *MTV Floribama Shore* is a title and therefore non-commercial speech fully protected by the First Amendment. What is disputed, however, is the district court's determination that appellants' mark is also a title, and therefore non-commercial speech entitled to a heightened level of protection. To the contrary, appellants' mark identifies its lounge and entertainment complex, making it a commercial trademark use. This distinction is not without a difference. Had the district court properly classified *Flora-Bama* as a source-identifying *trademark* rather than a title, it would have been bound by Eleventh Circuit precedent[4] to apply the two-part test created in *Rogers v. Grimaldi*.[5]

For more than thirty-years, the two-part *Rogers* test has stood as the "law of the land," allowing *Amici* and other creators a way to predictably clear titles for use for expressive works. From its humble beginning as a way to determine whether a title could permissibly include a celebrity's name, it has grown and evolved into a reliable adjudicator of all types of disputes in which trademark owners object to the inclusion of their marks in fully protected expressive works.

---

[3] *MGFB Props., Inc. v. ViacomCBS Inc.*, No. 19cv257, 2021 WL 4843905, at *1 (N.D. Fla. Sept. 22, 2021).
[4] *Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*, 683 F.3d 1266 (11th Cir. 2012).
[5] 875 F.2d 994, 999 (2d Cir. 1989).

No longer limited to its specific facts, the *Rogers* test is now routinely and uniformly applied to inclusion of trademarks in creative works, disputes between titles and products, and crucially, and perhaps most importantly for *Amici* and others in the entertainment industry, *disputes between titles*. The importance of the *Rogers* test and its *consistent* application across all jurisdictions cannot be overstated and is even recognized by Congress. In enacting the Trademark Modernization Act of 2020, Congress was clear that "it intends and expects that courts will continue to apply the *Rogers* standard to cabin the reach of the Lanham Act in cases involving expressive works" and critically, that "adoption by a court of a test that departs from *Rogers* . . . would be contrary to the Congressional understanding of how the Lanham Act should properly operate."[6] The district court's reasoning does just that. While *Amici* embrace the ultimate holding in this case, it is important for consistency, clarity, and predictability in the entertainment industry and among artists and creators that the same holding is reached for the right reasons.

The objectivity of the *Rogers* test is of critical importance, as it allows swift and efficient disposal of claims that seek to silence protected expression, often on motions to dismiss.[7] By rejecting the two-part test, the district court discarded

---

[6] H.R. Rep. No. 116-645, at 13-14 (2020).

[7] *Rebellion Devs. Ltd. v. Stardock Ent., Inc.*, No. 12-12805, 2013 US. Dist. LEXIS 66131, at *10 (E.D. Mich. May 9, 2013) ("The *Rogers* test is an appropriate one to

*Rogers'* objective approach in favor of a fact-intensive and subjective "balancing" of First Amendment concerns, requiring a court to apply the very same likelihood-of-confusion factors the *Rogers'* court explicitly dispensed with.

While the district court ultimately reached the right result, its reasoning was flawed. By improperly classifying the name of an entertainment complex as a title, it dangerously expanded constitutional protections afforded to purely commercial speech, and conversely took away protections for titles by misapplying Circuit law in holding that the two-part test does not apply in cases involving competing titles. If allowed to stand, these rulings would profoundly chill protected speech by making it difficult for artists and creators to select a title with any certainty, and without the comfort of knowing that in the event of a challenge the case could be disposed of early, without lengthy and expensive discovery, regardless of jurisdiction.

## **ARGUMENT**

I.      ***Rogers v. Grimaldi*** **Jurisprudence Recognizes the Importance of Not Subjecting Titles to the Traditional Likelihood-of-Confusion Test Because That Test Does Not Adequately Protect First Amendment Interests**

In *Rogers,* a filmmaker used Ginger Rogers' name in the title of a film. Recognizing that "the expressive element of titles requires more protection than the

---

apply in the early stages of litigation").

labeling of ordinary commercial products," the Second Circuit realized that applying the Lanham Act might "intrude on First Amendment values."[8]  To protect against this, the court created an objective two-part test requiring a threshold consideration when titles are at issue:  does the title have artistic relevance to the work and if so, has the defendant done anything to explicitly mislead consumers into believing an association with the senior user.[9]  Importantly, where this threshold determination is found in favor of the defendant, *the analysis ends*. Because the court found that the artistically relevant "title 'Ginger and Fred' contain[ed] no explicit indication that Rogers endorsed the film or had a role in producing it," the court had no need to analyze the likelihood-of-confusion factors and found in favor of the filmmaker.[10]

The two-part *Rogers* test was expressly adopted by the Eleventh Circuit in *University of Alabama Board of Trustees v. New Life Art, Inc.*[11] It has also been adopted by the Ninth Circuit in *Mattel, Inc. v. MCA Records*[12] and applied and expanded in five subsequent Ninth Circuit cases, and by the Third,[13]

---

[8] 875 F.2d at 999.

[9] *Id.* at 1000.

[10] *Id.* at 1001.

[11] 683 F.3d at 1277-78 ("we have no hesitation in joining our sister circuits by holding that we should construe the Lanham Act narrowly when deciding whether an artistically expressive work infringes a trademark").

[12] 296 F.3d 894 (9th Cir. 2002), cert. denied, 537 U.S. 1171 (2003).

[13] *Seale v. Gramercy Pictures,* 949 F. Supp. 331 (E.D. Pa. 1996), *aff'd without opinion*, 156 F.3d 1225 (3d Cir. 1998); *see also Hidden City Phila. v. ABC, Inc.*,

Fifth, [14] and Sixth [15] Circuits, and district courts within the Seventh Circuit. Importantly, the two-part *Rogers* test has not been rejected by any federal circuit court.

## II.    The District Court Improperly Classified Appellant's Use of FLORA-BAMA for a Lounge and Entertainment Complex as a Title and then Improperly Held *Rogers*' Two-Part Test Inapplicable

The district court's holding is premised on its finding that, although "plaintiffs' use of its mark *Flora-Bama* relates primarily to its facility, not to the title of an artistic work," the mark had "occasionally been used in the title to artistic works, and in any event, artistic works [were] performed at the *Flora-Bama*" and thus it should be considered a dispute between two titles. [16] This conclusion represents a misunderstanding of protected speech.

Although there are naturally expressive aspects of trademarks, which after all were chosen by their owners to convey a message, trademarks are unambiguously considered commercial speech subject to government regulation. [17]

---

No. 18-65, 2019 WL 1003637, at *1 (E.D. Pa. Mar. 1, 2019) (granting motion to dismiss applying *Rogers* to title of journalistic videos).

[14] *Westchester Media v. PRL USA Holdings, Inc.,* 214 F.3d 658, 665 (5th Cir. 2000).

[15] *ETW Corp. v. Jireh Publ'g, Inc.* 332 F.3d 915, 928 (6th Cir. 2003).

[16] *MGFB Props., Inc. v. ViacomCBS Inc.*, No. 19cv257, 2021 WL 4843905, at *6 (11th Cir. Sept. 22, 2021). Because plaintiffs' trademark is so clearly not a title, we do not address the district court's erroneous determination that the *Rogers* two-part test does not apply in cases involving disputes between titles.

[17] The Lanham Act defines a trademark as "any word, name, symbol, or device [used] to identify and distinguish [one's] goods . . . from those manufactured or

On the other hand, the Supreme Court has made clear that titles of movies or television programs "are a form of expression whose liberty is safeguarded by the First Amendment."[18]

Appellants operate a bar/restaurant/performance venue, a purely commercial establishment. This business is separate and apart from third-party titles that include *Flora-Bama*, which are either expressive works *created by others*, including Kenny Chesney, or third-party documentaries and shows *about others'* performances at appellants' own venue.[19]  Appellants' "entertainment services" consist of nothing more than promoting others' protected works, which does not make them creative works themselves.[20] To the extent that appellants claim to have "licensed" their mark to be included in any of these third-party titles, which would have been legally unnecessary, the sole purpose was for increasing the visibility/recognition of their business, increasing attendance, and ultimately increasing sales, all purely commercial purposes.

The error of classifying appellants' FLORA-BAMA mark as a title becomes evident when viewed from the standpoint of appellants *as a defendant*. Had a third-

---

sold by others and to indicate the source of the goods."  15 U.S.C. § 1127.

[18] *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501 (1952).

[19] Although appellants claim to have "licensed" the right to use FLORA-BAMA in titles of creative works about their venue, including Mr. Chesney's song titled *Flora-Bama*, these types of third-party uses are legal and permissible without appellants' consent. Appellant's Br. 4.

[20] *Id.* at 1016.

party, prior user of a mark for a lounge/restaurant alleged that appellants' FLORA-BAMA mark infringed its rights, there is no doubt that it would have been adjudicated as a pure trademark dispute subject to the Lanham Act. Appellants surely would not have been allowed to claim that their use of FLORA-BAMA was entitled to a heightened standard of protection and subject to *Rogers* because their bar/restaurant includes a performance venue. This kind of reasoning would dangerously expand the scope of protection to which commercial speech is afforded.

This twisted logic was rejected in a prior case involving use of a trademark for an obviously commercial product: dark beer.[21] In response to plaintiff's allegation that defendant's mark PEAKY BLINDERS for beer infringed its prior rights in its television series title *Peaky Blinders*, defendant argued that its mark was entitled to a heightened level of protection because it communicated a message and idea to consumers, namely the family's historical connection to the real-life Peaky Blinders gang and the gang's "well-known dark history" with dark beer.[22] But the court was clear: "Such evidence does not demonstrate Defendants' use of the mark conveys an idea or point of view, and therefore the *Roger*s test does not

---

[21] *Caryn Mandabach Prods. Ltd. v. Sadlers Brewhouse Ltd.*, No. CV 20-10220, 2021 WL 2497928, at *2 (C.D. Cal. May 19, 2021).
[22] *Id.*

apply."[23] Similarly here, appellants' use of FLORA-BAMA does not convey an idea or point of view, and is purely commercial speech.

## III.    The District Court's Rejection of the Predictable Two-Part Test in Favor of Subjectively "Balancing" Trademark Interests and the First Amendment Is Likely To Chill Speech

### A.    Courts Are Generally Reluctant to Determine Likelihood of Confusion on Motions to Dismiss

"The likelihood of confusion test is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss."[24] As numerous cases within the Eleventh Circuit have held, "given the fact-intensive nature of the likelihood of confusion inquiry, many courts decline to even consider the likelihood of confusion until evidence has been presented at the summary judgment stage; this Court follows suit."[25] In contrast, the two-part "*Rogers* test is an appropriate one to apply in the early stages of litigation."[26] In fact, the overwhelming majority of courts applying *Rogers* have dismissed the cases on Rule 12(b)(6) motions, with

---

[23] *Id.*

[24] *Phoenix Ent. Partners, LLC v. George & Wendy's Tropical Grill, LLC*, No. 16-cv-852, 2017 WL 881826, at *4 (M.D. Fla. Mar. 6, 2017) (quoting *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006)); *See Zeltiq Aesthetics, Inc. v. Pobra Enters., LLC*, No. 16-cv-792, 2017 WL 238138, at *3 (M.D. Fla. Jan. 19, 2017).

[25] *Pyure Brands, LLC v. Nascent Health Science LLC*, No. 18-cv-23357, 2019 WL 7945226, at *8 (S.D. Fla. Mar. 4, 2019) (collecting cases).

[26] *Rebellion Devs. Ltd. v. Stardock Ent., Inc.*, No. 12-12805, 2013 U.S. Dist. LEXIS 66131, at *10 (E.D. Mich. May 9, 2013).

the others granting summary judgment to defendants, including cases involving disputes between titles. One of the most clear-cut examples of this comes from a district court within the Second Circuit, the very circuit the district court below mistakenly believed does not apply *Rogers* in title v. title disputes. In *Lemme v. NBC*, plaintiff alleged that NBC's dramatic series titled *American Dreams* infringed her rights in her use and federal registration for *American Dream* for a television talk-show series.[27] Citing *Rogers* and *Twin Peaks*, the Eastern District of New York applied the two-part test, granting pre-discovery summary judgment to NBC after finding that the title had artistic relevance to NBC's drama and NBC had done nothing to explicitly mislead consumers.[28] Other cases dismissing complaints involving creative works on Rule 12(b)(6) motions include *Vallejo v. Narcos Prods., LLC*, No. 1:18-cv-23462-KMM, 2019 WL 5884513, *4 (S.D. Fla. May 24, 2019)(involving elements in "Narcos" film); *Jackson v. Netflix*, 506 F.Supp.3d 1007 (C.D. Cal. 2020)(involving "Tiger King" title); *Medina v. Dash Films*, No. 15-cv-2551, 2016 WL 3906714 (S.D.N.Y. July 14, 2016) (involving use of title "Loisaidas"); *Hidden City Phila. v. ABC, Inc.,* No. 18-65, 2019 WL 1003637 (E.D. Pa. March 1, 2019) (involving title "Hidden Philadelphia"); *Eastland Music Grp., LLC v. Lionsgate Ent. Inc.*, No. 11-C-8224, 2012 WL

---

[27] 472 F. Supp. 2d 433 (E.D.N.Y. 2007).

[28] *Id.* at 446.

2953188 (N.D. Ill. July 19, 2012) (involving title "50/50"); and *Rebellion Dev. Ltd. v. Stardock Ent., Inc.*, 107 USPQ2d 2160, 2013 U.S. Dist. WL 1944888 (E.D. Mich. 2013) (involving title "Sins of a Solar Empire: Rebellion").

Shortly after appellants filed their Complaint, ViacomCBS moved to dismiss the case based on *Rogers.* The district court denied that motion finding that appellants used the mark "as the title of a television show" and "*Rogers* explicitly said its test does not apply to 'misleading titles that are confusingly similar to other titles.'"[29] Had the district court appropriately treated FLORA-BAMA as a trademark, then properly applied *Rogers*' two-part test, it would have easily concluded that the title *MTV Floribama Shore* did not infringe appellants' rights. As the district court later acknowledged, "while not previously used for the purpose, the term 'Floribama' well describes the geographic area hosting the culture depicted on the defendants' show,"[30] which would have met the "above zero" level of artistic relevance necessary to satisfy the first prong of the *Rogers* test.[31] And as to whether the use was explicitly misleading, the district court found that appellants "never depicted or even referred to the plaintiff's facility on the

---

[29] *MGFB Props., Inc. v. Viacom Inc.*, No. 19cv257, 2019 WL 8096508, at *1 (N.D. Fla. Oct. 21, 2019) (quoting *Rogers v. Grimaldi*, 875 F.2d 994, 999 n.5 (2d Cir. 1989)).

[30] *MGFB Props., Inc. v. ViacomCBS Inc.*, No. 19cv257, 2021 WL 4843905, at *7 (N.D. Fla. Sept. 22, 2021).

[31] *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008).

show"; graphically displayed the television show title entirely different from appellants' logo for its lounge; and did "nothing that comes close to trademark infringement,"[32] satisfying the second prong. Thus, the Lanham Act would not have applied to ViacomCBS's use of its title, just as the district court ultimately ruled. But because of the district court's flawed reasoning and misinterpretation of the law, appellees were subjected to expensive and protracted litigation before the district court eventually reached the same result it could have reached on the motion to dismiss it denied in 2019.

As the court wrote in *Washington Post Co. v. Keogh*, "[i]n the First Amendment area, summary procedures are . . . essential" because speakers "tend to become self-censors" when subjected to "the harassment of lawsuits," thus leading to less speech overall.[33] If a defendant knows it likely must wait until trial to find out if the First Amendment protects its use of a title, that knowledge is almost certain to unduly chill expression.

## B.    Balancing Tests Are Not Predictable in Result

Although the district court held that the *Rogers* two-part test did not apply, it realized that "the First Amendment remains relevant: a court still must balance the interest in trademark protection against the interest in free expression."[34]

---

[32] *MGFB Props., Inc.*, 2021 WL 4843905, at *8.
[33] *Wash. Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966).
[34] *MGFB Props., Inc.*, 2021 WL 4843905, at *6.

As the U.S. Supreme Court has cautioned, however, "balancing tests can yield unpredictable and at times arbitrary results."[35] The ambiguity and uncertainty of an open-ended and unmethodical "balancing" of trademark claims against asserted rights of free speech makes advance judgment about how a court will rule impossible to predict. While creators like appellees may have the financial resources to defend their rights, the majority of artists and writers will not, and "significant evidence shows that threats of suit in these situations remain frequent and effective" because "[f]or every speaker who fights back in court, countless others cautiously back away,"[36] uncertain if a court will ultimately rule in their favor, and unable to finance the fight to get there.

*Amici* and its members invest billions of dollars each year in entertaining, educating, and informing the public through fictional, non-fictional, and documentary works. Countless hours and resources are spent carefully selecting the titles for these works, typically a combination of elements that both inform the viewer about what they will see and enrich "a viewer's understanding of a work."[37] Once a title is selected, it undergoes a rigorous clearance process to ensure that it does not violate the rights of others' works that have come before it. This is rarely

---

[35] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 136 (2014).

[36] William McGeveran, *The Trademark Fair Use Reform Act*, 90 B.U.L. Rev. 2267, 2268-69 (2010).

[37] *Rogers*, 875 F.2d at 998.

a clearcut determination. Instead, counsel is guided by the initial wisdom of the *Rogers* court and three subsequent decades of jurisprudence applying and expanding the eponymous two-part test to cover constantly evolving circumstances and scenarios. The Second, Third, Fifth, Sixth, and Ninth Circuits have all recognized the importance of uniformity and consistency across all jurisdictions, without which creators lack the certainty they need to make sound legal decisions. The *Rogers* test has stood the test of time, and must remain consistent precedent across the country. With an objective, predictable test at its disposal, and decades of jurisprudence to guide its application, there is no reason for any court to have to subjectively balance the interests of trademark owners against free expression.

Moreover, inconsistent tests in different jurisdictions will lead to forum shopping, and an inability to determine whether a title is available without knowing where a claim might be brought.

Although the district court below was able to see the correct result in this case and subjectively "balance" First Amendment interests, other courts may not, or creators and artists may be scared off by the uncertainty and back away. Without the certainty and objectivity of the *Rogers* test, creators' freedom to express themselves through their chosen titles will undoubtedly suffer.

## CONCLUSION

This Court should reject the district court's finding that appellants' FLORA-

BAMA trademark is a title, which would result in application of the objective, two-part *Rogers* test to appellees' *MTV Florabama Shore* title, and affirm the judgment of the district court on that basis.

Dated:     March 11, 2022

KELLY IP, LLP

/s/ Lynn M. Jordan
Lynn M. Jordan
David M. Kelly
1300 19th St., NW
Washington, DC 20036
(202) 808-3570


and

SHULLMAN FUGATE PLLC

/s/Deanna K. Shullman
Deanna K. Shullman
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411

*Attorneys for Amicus Curiae*

## <u>CERTIFICATE OF COMPLIANCE</u>

Counsel for Amicus Curiae hereby certifies that this brief complies with the spacing, typeface, and style requirements of Federal Rules of Appellate Procedure 29 and 32 and that, in keeping with Rules 29(a)(5) and 32(a)(7), this brief contains 3,831 words excluding the cover page, corporate disclosure statement, table of contents, table of authorities, signature block, and certificates of compliance and service.

/s/ Deanna K. Shullman
Deanna K. Shullman
SHULLMAN FUGATE PLLC

*Attorney for Amicus Curiae*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 11, 2022, I electronically filed the foregoing

with the Clerk of the Court for the United States Court of Appeals for the Eleventh

Circuit by using the CM/ECF, which will notify all registered counsel.


/s/ Deanna K. Shullman
Deanna K. Shullman
SHULLMAN FUGATE PLLC

*Attorney for Amicus Curiae*