No. 21-13458

In the

# United States Court of Appeals

For the Eleventh Circuit

**MGFB PROPERTIES, INC.,**
**FLORA-BAMA MANAGEMENT, LLC, and**
**FLORA-BAMA OLD S.A.L.T.S., INC.,**

Plaintiffs-Appellants,

*v.*

**VIACOMCBS, INC.,**
**495 PRODUCTIONS HOLDINGS, LLC, and**
**495 PRODUCTIONS SERVICES, LLC,**

Defendants-Appellees.

On Appeal from the United States District Court
for the Northern District of Florida

## REPLY BRIEF OF APPELLANTS

William F. Cash III
Troy A. Rafferty
Joshua R. Harris
**LEVIN, PAPANTONIO, RAFFERTY,**
**PROCTOR, BUCHANAN, O'BRIEN,**
**BARR, & MOUGEY, P.A.**
316 S. Baylen Street #600
Pensacola, FL 32502
Phone: 850-435-7059

Fred H. Perkins
**MORRISON COHEN LLP**
909 Third Avenue
New York, NY 10022
Phone: 212-735-8647

## CERTIFICATE OF INTERESTED PERSONS

For the corporate disclosures required by Fed. R. App. P. 26.1(a), Appellant MGFB Properties, Inc. states that it has no parent corporation and there is no publicly held corporation that owns 10% or more of its stock. As for the two Appellants that are LLCs, they also state that no publicly held corporation owns 10% or more of them.

The following persons or entities may be persons with an interest in this appeal:

| |
|---|
| 495 Productions Holdings, LLC |
| 495 Productions Services, LLC |
| Bogle, Brandon L. |
| Bowden, Wesley A. |
| Carlton Fields, P.A. |
| Cash III, William F. |
| Davis, Christine R. |
| Davis Appeals, PLLC |
| Flora-Bama Management, LLC |
| Flora-Bama Old S.A.L.T.S., Inc. |
| Hon. Frank, Michael J. |
| Gilchrist, Joseph |
| Harris, Joshua R. |

Hon. Hinkle, Robert L.

Jaffré, Rémi J.D.

Jenner & Block LLP

Katherine L. Burkhart

Kohlmann, Susan J.

Lamb, Brittany R.

Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr, & Mougey, P.A.

McClellan, Patrick

McInnis, John

MGFB Properties, Inc.

Morrison Cohen LLP

National Amusements, Inc.

Papantonio, Michael J.

Pass, Robert W.

Perkins, Fred H.

Price, Cameron

Proctor, Mark J.

Rafferty, Troy A.

Schultz, Matthew D.

Stein, Alison I.

Tracer, Jacob

| |
|---|
| Unikowsky, Adam |
| ViacomCBS, Inc. (formerly: Viacom, Inc.) |
| Viacom International Inc. |
| Wong, Ethan |
| Y. David Scharf |

/s/ William F. Cash III
William F. Cash III

*Attorney for Appellants*

Dated: April 8, 2022

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .......................................................ii

TABLE OF CITATIONS ...........................................................................vi

SUMMARY OF ARGUMENT ....................................................................1

ARGUMENT .............................................................................................3

I.    Plaintiffs used the "Flora-Bama" trademarks as a First Amendment protected title, thereby justifying the application of the "confusingly similar titles" exception. ..............................................................3

    A.   Live musical entertainment is a First Amendment-protected activity, "Flora-Bama" is Plaintiffs' trademark for that activity, and it should be protected. .....................................................................5

    B.   The Court should protect Plaintiffs' titles from confusingly similar titles. ............................................................................................7

II.   The traditional likelihood of confusion factors are the appropriate standard to apply when there are confusingly similar titles......................................10

III.  Balancing Plaintiffs' trademark rights and First Amendment interests with Defendants' First Amendment interests, there is no need to tip the scales in favor of Defendants. .................................................................................13

IV.  The district court improperly applied the summary judgment standard and improperly acted as a fact finder. .............................................................19

    A.   Strength of the mark ...........................................................................20

    B.   Similarity of the marks......................................................................21

    C.   Similarity of the parties' goods and services, trade channels and customers .............................................................................................22

    D.   Defendants' ill intent to misappropriate Plaintiffs' goodwill.............24

    E.   Actual confusion ................................................................................27

CONCLUSION ........................................................................................29

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITS ..............31

# TABLE OF CITATIONS

## Cases

*AM General LLC v. Activision Blizzard, Inc.*, 450 F. Supp.3d 467 (S.D.N.Y. 2020) ..7

*Apollo Theatre Found., Inc. v. W. Int'l Syndication*,
    2005 WL 1041141 (S.D.N.Y. May 5, 2005) ........................................................ 10

*Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496 (5th Cir. 1979)................. 29

*Beach Mart, Inc. v. L&L Wings, Inc.*, 784 F. App'x 118 (4th Cir. 2019)...................... 5

*Canes Bar & Grill of S. Fla., Inc. v. Sandbar Bay, LLC*,
    343 F. Supp. 3d 1236 (S.D. Fla. 2018) ................................................................ 28

*Chanel, Inc. v. Italian Activewear of Fla., Inc.,* 931 F.2d 1472 (11th Cir. 1991) .......... 25

*Cobb v. Pozzi*, 363 F.3d 89 (2d Cir. 2003) ....................................................................13

*Custom Mfg. & Eng'g v. Midway Servs., Inc.*, 508 F.3d 641 (11th Cir. 2007)............. 25

*eMachines, Inc. v. Ready Access Memory, Inc.*,
    No. EDCV-00-00374-VAP(EEx), 2001 WL 456404 (C.D. Cal. Mar. 5, 2001)...... 5

*Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*,
    830 F.3d 1242 (11th Cir. 2016) ........................................................................... 20

*Frehling Enters., Inc. v. Int'l Select Group, Inc.,* 192 F.3d 1330 (11th Cir. 1999)) . 25, 28

*Investacorp, Inc. v. Investment Banking Corp (Investcorp) E.C.*,
    931 F.3d 1519 (11th Cir. 1991) ........................................................................... 21

*J-B Weld Co. LLC v. Gorilla Glue Co.,* 978 F.3d 778 (11th Cir. 2020) .... 19, 25, 27, 28

*John J. Harlan Co. v. Clarke Checks, Inc.,* 711 F.2d 966 (11th Cir. 1983) ................. 22

*Kiedis v. Showtime Networks, Inc.*, CV07-8185 DSF(MANx),
    2008 WL 11173143 (C.D. Cal. 2008) ...................................................................11

*Legacy Entm't Grp., LLC v. Endemol USA Inc.*, No. 3:15-cv-252-HES-PDB,
    2015 WL 12838795 (M.D. Fla. Sept. 30, 2015) .................................................. 10

*Lemme v. Nat'l Broadcasting Co., Inc.,* 472 F. Supp. 2d 433 (E.D.N.Y. 2007) ......... 12

*Letica Corp. v. Sweetheart Cup Co.*, 805 F. Supp. 482 (E.D. Mich. 1992) ................. 5

*Montana Prof. Sports, LLC v. Leisure Sports Mgmt., Inc.*,
    422 F. Supp. 2d 1271 (M.D. Fla. 2006)............................................................... 22

*Moore v. Weinstein Company,* No. 3:09-CV-00166, LLC, 2012 WL 1884758
  (M.D. Tenn. May 23, 2012) ...................................................................11

*Morgan Creek Prods. v. Capital Cities/ABC, Inc.*, No. CV-89-5463-RSWL ( JRx),
  1991 WL 352619, at *4–5 (C.D. Cal. Oct. 28, 1991) ..............................11

*PlayNation Play Systems, Inc. v. Velex Corp.*, 924 F.3d 1159 (11th Cir. 2019) ...... 21, 22

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) ................................. passim

*Simon & Schuster, Inc. v. Dove Audio, Inc.*, 970 F. Supp. 279 (S.D.N.Y. 1997) ..... 8, 14

*Sony Computer Ent'mt Am., Inc. v. NASA Electronics Corp.*, No. 07-20819-CIV,
  2008 WL 11333475 (S.D. Fla. Feb. 7, 2008)............................................ 4

*Sovereign Order v. Fla. Priory*, 809 F.3d 1171 (11th Cir. 2015)....................20

*Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.*,
  749 F. Supp. 1243 (S.D.N.Y. 1990) .................................................. 10

*Tri-Star Pictures, Inc., v. Unger*, 14 F. Supp. 2d 339 (S.D.N.Y. 1998)........................11

*Twin Peaks Prods. v. Publ'ns Int'l Ltd.*, 996 F.2d 1366 (2d Cir. 1993) ................ 12, 20

*Univ. of Ala. Bd. of Trs v. New Life Art, Inc.*, 683 F.3d 1266 (11th Cir. 2012) ......14, 18

*Univ. of Ga. Athletic Ass'n v. Laite,* 756 F.2d 1535 (11th Cir. 1985)...........................28

*Viacom Int'l v. LJR Capital Investments*, LLC, 891 F. 3d 178 (5th Cir. 2018) ..........24

*Virgin Enters. Ltd v. Nawab*, 335 F.3d 141 (2d Cir. 2003).........................................28

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) .................................... 6

*Warner Bros. Entm't v. Global Asylum, Inc.*, No. CV12-9547 PSG(CWx),
  2013 WL 12114836 (C.D. Cal. Jan. 29, 2013) ........................................ 8

*You Fit, Inc. v. Pleasanton Fitness, LLC*, No. 8:12-cv-1917-T-27EAJ,
  2013 WL 521784 (M.D. Fla. Feb. 11, 2013) ......................................... 29

**Statutes**

15 U.S.C. § 1055 ................................................................................... 5

## SUMMARY OF ARGUMENT

It is hard to respond to Defendants' arguments without invoking David and Goliath. The difference here is Goliath tried to do business with David for years before they battled.

Their brief confirms the breathtaking arrogance of Defendants' position. According to them, the law permits them to:

- Make repeated offers to do business with a smaller enterprise that has been operating in the same spot for over fifty years.

- Survey the region, send representatives to inspect the premises, and make further enquiries about making a television show.

- Write PowerPoints describing the enterprise, the kind of people who go there, and what the vibe is.

- Steal the name of the smaller enterprise, change one letter, and then put the name onto a globally-distributed television program that does not exactly paint Gulf Coast residents in the best light.

- Make up a fake region called "Floribama" that stretches east from Texas across all five Gulf Coast states, and have actors read scripts about it. Tell those actors, quote, "Floribama is just a bar. Ignore that part for now."

- Have a senior executive post on Twitter about the show but use the enterprise's name instead.

- Create significant consumer confusion, where consumers erroneously believe an edgy TV show is produced by the enterprise, or—just as troubling—where consumers erroneously believe the show came first and the enterprise is ripping the show's name off.

- Profit, at the expense of the enterprise, which has lost business due to consumer confusion.

- Pour salt in the wounds, by advertising the infringing TV show on the billboard nearest to the smaller enterprise. (Defendants did not ultimately go this far, but they talked about it, and they now insist it would be perfectly acceptable.)

While First Amendment expression is obviously of paramount importance in a free society, it does not grant mega-corp ViacomCBS and its partner 495 a free pass to stomp on the established business of a smaller competitor. The Defendants are here in Court now, deriding the Flora-Bama's efforts to promote itself and knocking its legitimate business, music, film, and print products—and at the same time, Defendants are out in the real world, swamping the marketplace with their promotions and arrogating the longtime "Flora-Bama" name to themselves. While this media giant may scoff at it, the Flora-Bama *has* been approached to be the focus of its own television show, by the Defendants themselves and by others. That would seem to confirm the parties absolutely are direct competitors in the entertainment business. ViacomCBS should not be allowed to just snatch the name "Flora-Bama" for itself; Plaintiffs were here first.

After four seasons of the show, one can no longer hear, think, or Google the word "Flora-Bama" without *Floribama Shore* coming to mind. As Defendants concede, the Flora-Bama enterprises have aggressively defended their mark any

time another business attempts to use it, and that's because the mark has great

value and goodwill, built up over the decades, which this Court must protect.

## ARGUMENT

**I. Plaintiffs used the "Flora-Bama" trademarks as a First Amendment protected title, thereby justifying the application of the "confusingly similar titles" exception.**

Contra what the Defendants have argued, this *is* a case involving confusingly

similar titles for expressive works. Defendants don't dispute that "Flora-Bama"

appears in the title of a TV show, internet radio station, films, songs, and books

which the Plaintiffs have produced or licensed.

Rather than concede that there are competing titles at issue here, Defendants

go out of their way to deride and minimize the scope of Plaintiffs' activities. These

suggestions are not tethered to any facts or law.

Defendants have argued that by permitting Plaintiffs to defend their trademark

against Defendants' global campaign of misappropriation, the Court would "allow[]

the tail to wag the dog." (Defs.' Br. 24.) That is not what is going on here. Plaintiffs

do have their own legitimate First Amendment interests—in published works that

they have created or authorized, in live music that they have produced and

presented for decades, as well as future opportunities into which they absolutely

have a right to expand.

Regarding use of the "Flora-Bama" name in published works, it is clear that by extending licenses for the name, Plaintiffs have benefited from the name and have a right to protect it. Defendants misrepresent the record by misleadingly asserting that, other than one case, "there is no documentary evidence" of any of Plaintiffs' licenses of the "Flora-Bama" trademarks. (Def. Br. 7.) In fact, there is *abundant* documentary evidence of various agreements licensing the use of "Flora-Bama" trademarks for artistic works, including in titles. (Tab 103-100 at 15-18; Tab 103-89 at 5-6; Tab 103-46 at 1; ECF 176-250 (Ex. 102).) Moreover, "oral agreements conveying trademark licensing rights are legally permissible." *Sony Computer Ent'mt Am., Inc. v. NASA Electronics Corp.*, No. 07-20819-CIV, 2008 WL 11333475 at *6 (S.D. Fla. Feb. 7, 2008). Plaintiffs verbally licensed rights to the "Flora-Bama" trademarks to Kenny Chesney and his company for use in the title of the Viacom broadcast television special, *Kenny Chesney: Live at the Flora-Bama* (which in turn sublicensed distribution rights to Viacom/CMT) and co-produced the concert entitled *Flora-Bama Jama* on which the televised program was based. (Tab 103-27 at 50:16-51:21; Tab 103-45 at 191:3-192:6; ECF 181-11, McInnis Dep. at 123:12-126:16, 128:9-19, 129:20-130:6, 131:10-132:1, 132:15-25, 134:17-135:12; ECF 176-17.)

Where Plaintiffs' "Flora-Bama" trademarks are used by licensees in artistic titles (including Kenny Chesney and Viacom/CMT), there is no question that such licensed use inures to the benefit of Plaintiffs as the trademark owner/licensor. 15 U.S.C. § 1055; *Beach Mart, Inc. v. L&L Wings, Inc.*, 784 F. App'x 118, 128 (4th Cir. 2019); *Letica Corp. v. Sweetheart Cup Co.*, 805 F. Supp. 482, 487 (E.D. Mich. 1992) (Sec. 1055 includes verbal licenses). One such benefit of licensed use is the licensor's right to sue for infringement of a licensee's work as if it was the licensor's. *eMachines, Inc. v. Ready Access Memory, Inc.*, No. EDCV-00-00374-VAP(EEx), 2001 WL 456404, at *8 (C.D. Cal. Mar. 5, 2001).

What the record demonstrates here is that Plaintiffs have had a history of producing or licensing expressive works, which Defendants cannot explain away. Their competing show, *Floribama Shore*, is a junior user of the same underlying mark. And no matter how expensive or lavish the production might be, Defendants' use must give way.

### A. Live musical entertainment is a First Amendment-protected activity, "Flora-Bama" is Plaintiffs' trademark for that activity, and it should be protected.

In addition to Plaintiffs' use of "Flora-Bama" on various artistic works, there is more: Plaintiffs' use of the mark on live music productions. Live music has been performed daily at the Flora-Bama Lounge and related "Flora-Bama" branded establishments for decades. (Tab 188 at 15.) The "Flora-Bama" trademarks do not

merely signify establishments where food and drink are served, as Defendants and *amici* contend; they stand for these decades of live music history. Unquestionably, music is a First Amendment-protected activity. *Ward v. Rock Against Racism*, 491 U.S. 781, 789–90 (1989) (music is "one of the oldest forms of human expression" and is "protected under the First Amendment").

That makes Defendants' hypotheticals rather inapt—for example, the suggestion that the Coca-Cola Company could produce a book about itself and then seek to enforce its trademark against other First Amendment-protected users on the basis that they are competing with its title. Defendants advanced that hypothetical to scare the Court about the consequences of ruling for Plaintiffs. But the difference between that scenario and the one at bar is: the Plaintiffs actually do *use* their trademark as a symbol for live music, in the title of concerts like the *Flora-Bama Jama*, and other First Amendment-protected expression. The live musical content at the Flora-Bama is inseparable from the trademarked name of those establishments. Plaintiffs have legitimately registered and used the "Flora-Bama" trademarks for "entertainment services in the nature of live musical performances" —an activity entitled to just as much First Amendment protection as the content of a book, movie, song or television show. (Tab 1 at Ex. A.)

If the use of commercial products such as a car or handbag in a movie or video game can be considered First Amendment protected "artistic expression," *e.g.*, *AM General LLC v. Activision Blizzard, Inc.*, 450 F. Supp.3d 467, 477–78 (S.D.N.Y. 2020), then so too should live musical entertainment performed in trademark-entitled establishments.

### B.    The Court should protect Plaintiffs' titles from confusingly similar titles.

Defendants attack the entire notion of the confusingly similar titles exception, saying that consumers could never be confused by two expressive works that have the same or closely similar titles. But that contradicts *Rogers* itself:

> Movies, plays, books, and songs are all indisputably works of artistic expression and deserve protection. Nonetheless, they are also sold in the commercial marketplace like other more utilitarian products, making the danger of consumer deception a legitimate concern that warrants some government regulation. . . . **Poetic license is not without limits.** The purchaser of a book, like the purchaser of a can of peas, has a right not to be misled as to the source of the product. Thus, it is well established that where the title of a movie or a book has acquired secondary meaning—that is, where the title is sufficiently well known that consumers associate it with a particular author's work—the holder of the rights to that title may prevent the use of the same or confusingly similar titles by other authors . . . . **Indeed, it would be ironic if, in the name of the First Amendment, courts did not recognize the right of authors to protect titles of their creative work against infringement by other authors.**

*Rogers v. Grimaldi*, 875 F.2d 994, 997–98 (2d Cir. 1989) (citations omitted) (emphasis added).

Defendants' analogy suggesting that no one could confuse two works entitled *The River* or *Love Story* completely misses the point. In both of those examples, none of the artists sought trademark protection for their titles like Plaintiffs did here. And "river" and "love story" are common words, everyday language. They are not coined trademarks suggestive of a single source like "Flora-Bama." Defendants overlook that confusion can arise without reference to the author's name when a second title uses a well-known trademark as the central part of its title.

That was the case with *Warner Bros. Entm't v. Global Asylum, Inc.*, No. CV12-9547 PSG(CWx), 2013 WL 12114836, at *1 (C.D. Cal. Jan. 29, 2013), *aff'd*, 544 F. App'x 683 (9th Cir. 2013). A film entitled "Age of Hobbits" was enjoined—despite a First Amendment defense—because of the likely confusion with the novel entitled "The Hobbit." *See also Simon & Schuster, Inc. v. Dove Audio, Inc.*, 970 F. Supp. 279, 296, 300–01 (S.D.N.Y. 1997) (applying the confusingly similar titles exception to *Rogers*, and enjoining publication and distribution of audiobook "*The Children's AudioBook of Virtues*" because it infringed on plaintiff's "*The Book of Virtues*"). It's not difficult to envision the same result if someone published a book, movie, or television show using the trademarks "Star Wars" or "Star Trek" on a work having nothing to do with the original. Confusion would abound, even without

the infringing artist using George Lucas's or Gene Roddenberry's names in their title.

Nor is there any merit to Defendants' contention that there is no confusion in the record regarding "Flora-Bama" as used in titles. Obviously, given that "Flora-Bama" trademarks entitle Plaintiffs' establishments where First Amendment protected music is performed, and there was record evidence of confusion between "*Floribama Shore*" and the Flora-Bama enterprise, there is evidence of confusingly similar titles. In addition, Plaintiffs made clear from the inception of this litigation that their establishments are renowned for their daily live music and that "Flora-Bama" entitled licensed artistic works were at issue. (Tab 1 at 9–11; Tab 103-89 at 4–6.) Plaintiffs also provided evidence of the strong association of Plaintiffs' establishments with Kenny Chesney's "Flora-Bama" concert, song and the CMT televised program and of actual confusion, particularly on social media, with Defendants' show. (Tab 103-77 at 52, 58, 124, 135 and 141.)

Defendants and *amici* are also wrong to suggest that, if this Circuit follows *Rogers* and adopts the confusingly similar titles exception to the test, there will be a chilling effect on speech or First Amendment rights. What's at stake is here is *nothing* but the *title* of Defendants' show. Not one word of dialogue, not one frame

9

of the story would need to be changed to accommodate Plaintiffs' legitimate

trademark interests.

Conversely, if this Court affirms the district court, then Plaintiffs' valuable

rights to manage and control their own trademark as a unique symbol for their

establishments have been severely damaged, and their ability to use their trademark

for their own TV show—which they've been repeatedly solicited for—has been

gutted. (ECF 181-12, McInnis Dep. at 296:19–298:8.)

As the district court properly recognized, this is a case where the confusingly

similar titles exception to *Rogers* is applicable. The key issue is: what is the

appropriate standard to apply when *Rogers* does not? Plaintiffs turn to that next.

## II. The traditional likelihood of confusion factors are the appropriate standard to apply when there are confusingly similar titles.

As explained in our opening brief, courts in the Eleventh and Second Circuits

have applied the standard likelihood of confusion factors to determine the merits of

a trademark infringement claim where *Rogers* does not apply. (Pls'. Br. 24–25.)

*Legacy Entm't Grp., LLC v. Endemol USA Inc.*, No. 3:15-cv-252-HES-PDB, 2015

WL 12838795, at *5–6 (M.D. Fla. Sept. 30, 2015); *Apollo Theatre Found., Inc. v. W.

Int'l Syndication*, 2005 WL 1041141 at *15 (S.D.N.Y. May 5, 2005); *Tri-Star

Pictures, Inc. v. Leisure Time Prods., B.V.*, 749 F. Supp. 1243, 1253 (S.D.N.Y. 1990).

Defendants now denigrate these cases as "outliers." However, not only are all three decisions still good law, but contrary to Defendants' assertion, at least one *has* been cited and applied for the proposition that *Rogers'* First Amendment principles do not apply to claims of confusingly similar titles. *Tri-Star Pictures, Inc., v. Unger*, 14 F. Supp. 2d 339, 354 & n. 12 (S.D.N.Y. 1998) (after the Second Circuit's decisions in *Cliff Notes* and *Twin Peaks*, the *Tri-Star* court relied on both its prior ruling and *Cliff Notes* to apply standard likelihood of confusion factors to confusingly similar titles).

Similarly, courts from outside the Second and Eleventh Circuits have dispensed with the *Rogers* test and applied the standard likelihood of confusion factors where there were confusingly similar titles. *E.g.*, *Moore v. Weinstein Company,* No. 3:09-CV-00166, LLC, 2012 WL 1884758, at *35 (M.D. Tenn. May 23, 2012) (the *Rogers* test does not apply to misleading titles confusingly similar to other titles; instead "the basic 'likelihood of confusion' test applies"). Even in the Ninth Circuit, prior to the *Empire* decision, certain district courts recognized that confusingly similar title cases are an exception to the *Rogers* two-prong test. *E.g.*, *Kiedis v. Showtime Networks, Inc.*, CV07-8185 DSF(MANx), 2008 WL 11173143, at *3–4 (C.D. Cal. 2008); *Morgan Creek Prods. v. Capital Cities/ABC, Inc.*, No. CV-89-5463-RSWL ( JRx), 1991 WL 352619, at *4–5 (C.D. Cal. Oct. 28, 1991).

In our case, the district court based its heightened confusion standard on the Second Circuit's decision in *Twin Peaks Prods. v. Publ'ns Int'l Ltd.*, 996 F.2d 1366 (2d Cir. 1993). Defendants don't dispute that, in *Twin Peaks*, neither side even cited or argued that the two-part *Rogers* test doesn't apply. (Pls'. Br. 29–30 & n.1.) Nor can Defendants fairly dispute that the "particularly compelling" likelihood of confusion standard is merely the Second Circuit test to determine the second prong of the traditional *Rogers* test—namely, whether the work is "explicitly misleading." *See* Pls.' Br. 30. Indeed, at least one of the cases Defendants cited to suggest otherwise in fact held that "whether the title 'explicitly misleads as to source or content of the work'" (the second prong of the *Rogers* test) is "determin[ed]" by application of whether the standard likelihood of confusion factors are "particularly compelling." *Lemme v. Nat'l Broadcasting Co., Inc.,* 472 F. Supp. 2d 433, 446 (E.D.N.Y. 2007).

Finally, the Defendants argued that in applying its likelihood of confusion test, the district court must have been reaching for a "clear and convincing" quantum of evidence. (Defs'. Br. 37–38.) There is absolutely no support for that, and the district court did not make that finding either. In any event, it is not an appropriate standard. Why should the potential infringer be given an edge over the senior user in a confusing titles case? What interest does that serve?

In conclusion, the typical, run-of-the-mill likelihood of confusion factors should determine whether there is infringement.

### III. Balancing Plaintiffs' trademark rights and First Amendment interests with Defendants' First Amendment interests, there is no need to tip the scales in favor of Defendants.

Notwithstanding that Plaintiffs' licensed works and live music establishments implicate protectable First Amendment interests, Defendants and *amici* nonetheless strive to exalt Defendants' First Amendment interests over the Plaintiffs in a balancing of the parties' rights and interests. However, Defendants cannot deny the well-established principle that there "should exist no hierarchy among First Amendment rights." *Cobb v. Pozzi*, 363 F.3d 89, 105 (2d Cir. 2003). Yet, that is exactly what they would have this Court do by tilting the scales in favor of Defendants' First Amendment interest over Plaintiffs by requiring Plaintiffs to satisfy a heightened confusion standard.

Defendants don't want a balancing approach that would consider whether Defendants truly *needed* to use Plaintiffs' trademark in their title, implicitly conceding that they had no particular need to do so. But this Court took "need" into account in the past, in *University of Alabama*, the football paintings case, when weighing the interest in free expression against the interest in avoiding consumer confusion. *Univ. of Ala. Bd. of Trs v. New Life Art, Inc.*, 683 F.3d 1266 (11th Cir.

2012). This Court determined that artistic expression outweighed trademark interests, significantly, *because* the defendant "*needed*" to refer to the University's uniforms for a "realistic portrayal of famous scenes from Alabama football history." *Univ. of Ala.*, 683 F.3d at 1278–79 (emphasis added). According to Defendants, "[c]ourts are not qualified to make such determinations." (Defs'. Br. 32–33.) Plaintiffs reject that. That's exactly what this Court did in *University of Alabama*, by determining that the defendant's "*necessary* inclusion" of the University's trademark in its artistic work justified a ruling for defendant. 683 F.3d at 1279 (emphasis added).

Likewise, the "*need*" for a defendant to parody a plaintiff's work was also the critical basis for a determination in the defendant's favor in *Cliff Notes*: "a balancing approach allows greater latitude for works such as parodies, in which expression, and not commercial exploitation of another's trademark, is the primary intent, and in which there is a *need* to evoke the original work being parodied." 886 F.2d at 495 (emphasis added).

Even in *Simon & Schuster*, which Defendants rely upon to argue the appropriate standard, the court enjoined the defendant from further use of the plaintiffs' trademarked title because the defendant "*need* not evoke plaintiffs' work, as a parody must, *nor must* [the defendant] use [the key part of plaintiff's book title] in

14

order to describe accurately" the content of its work. 970 F. Supp. at 300, n.20 (emphasis added); *see also* Pls.' Br. 32–33. In other words, *Simon & Schuster* held that the defendant's use of plaintiff's trademark and title did not outweigh the plaintiff's rights because such use was *not* an "'integral element' of [defendant's books] and their creator's 'artistic expressions.'" 970 F. Supp. at 300 (quoting *Rogers*, 875 F.2d at 1001). In other words, the defendant lost because it did not need to use the trademark.

Here, whether you call it "need" or an "integral element," Plaintiffs' "Flora-Bama" mark was not necessary for Defendants to use as the title of their program. If this Court affirms that approach again, the Defendants' boogeymen—chilling of expression, an increase in litigation, and uncertainty in the world of creative types—will not come to pass. Instead, the Court will be protecting the stability and certainty of legitimate business interests—trademark holders who have invested decades of time and effort into their businesses. And who, importantly, were there *first*. The interest is *all the stronger* when the Court takes into account that Defendants knew full well they were about to steal Plaintiffs' mark. In this case, Defendants literally ran a trademark search and found "Flora-Bama" front and center.

*Floribama Shore* is not a parody, satire, review, critique, or documentary that has any need to use the "Flora-Bama" trademark. It was set over 100 miles away from the Florida-Alabama border—seasons 1 and 2—and then 300 miles away—season 3—and then over 1,000 miles away—season 4. None of the artistic expression pertained to the "Flora-Bama" establishments or to the Florida-Alabama border area. As the district court observed, the place where seasons 1 and 2 were filmed isn't called "Floribama." He said: "I don't know how much of this is in the record, but what people in Panama City would tell you, probably the people on your show, they would say: Oh, this area is called L.A.—Lower Alabama. It's not called Flora-Bama." (Tab 154, Jul. 2 Hr'g Tr. 19:20–24.)

Defendants have just stretched and pulled the word "Flora-Bama," an incontestable federal trademark, into a made-up geographic region. Then they have set their show within that "region." The district court challenged them:

> So, the breadth of your argument really is this, you can take a word, no matter how unique, coined by a company to describe its own mark in the entertainment business, you can deliberately copy that mark intending to get a financial, competitive advantage from using the word coined by the other company, you can put it in the title of your work, you can make it relevant by having your characters talk about it as part of the work, and you are good to go. There is [no] Lanham Act violation. Your argument really is that sweeping. Yes?

(Tab 160, Jul. 9 Hr'g Tr. 6:19–7:7.) Defendants say: Yes.

16

To justify their stretch, Defendants cite an executive who in a self-serving email asserted that *Floribama* just "screams louder" than *Gulf Shore*. Somehow, the name invokes a specific "subculture" of an area even though the show is set nowhere near the Florida-Alabama border. Their claim that they "needed" "Flora-Bama" is undercut by other testimony of Defendants' executives that the show could have been filmed at locations "all around the country," including Texas. (Pls.' Br. at 35.) As another of Defendants' executives admitted, it is "fair to say" that "the organizing principle behind the show *didn't matter* if the show was titled Gulf Shores or Floribama Shore." (Tab 103-1 at 278:18-279:3; ECF 176-1 at 278:18-279:3) (emphasis added).)

That thin matter forms the basis for Defendants' "need" to use Plaintiffs' name. Just because Defendants wish they could, doesn't mean they need to.

Defendants contend that artists will be unable to determine if their show title is infringing or not if a "need" test is applied. To the contrary, artists will have clarity in guiding their creative decisions. If Defendants are considering using another's trademark simply because they think it will be a catchy name that "screams" to the audience, but has nothing to do with the show or its content, they will be deterred from such infringing conduct—and properly so. Conversely, if the title of the show is actually integrally related to the show's content, or the show logically needs to

refer to the plaintiff's trademark because it is *about* the plaintiff, its business or its artistic expression in some way, then it is equally clear that such use is permissible.

To support their argument, Defendants absurdly claim that "the author of the *Encyclopedia of Apple Varieties* would have no First Amendment defense to a trademark claim brought by Apple Inc. because 'apple' in the title does not refer to that technology company." (Defs.' Br. at 34–35.) Obviously, an author of a book about apples needs to refer to apples and clearly may do so under the standard proffered by Plaintiffs and the holdings of *University of Alabama* and *Rogers*. Apples are an integral element of a book about apples. But the Flora-Bama Lounge or even the Florida-Alabama border are not an integral element of *Floribama Shore*.

Plaintiffs do not propose a subjective intent-based test as Defendants erroneously assert. (Defs.' Br. at 35.) Rather, a court can and should analyze whether there was any objective need to use Plaintiffs' trademark. Obviously, if there is evidence of intent to misappropriate the good will of Plaintiffs' trademark, that evidence is relevant to demonstrating the lack of any real need to use the mark, and is probative of Defendants' real motivation. *See* Pls'. Br. 34. While courts do determine the defendant's intent in trademark infringement cases all the time, a finding of wrongful intent is not necessary to assess need.

In sum, if the Court finds it appropriate to balance Plaintiffs' trademark and First Amendment rights in using "Flora-Bama" in titles of artistic works with Defendants' First Amendment rights, then the balancing should not start with any inherent tilt in Defendants' favor and should come out in Plaintiffs' favor given that use of "Flora-Bama" was not necessary for Defendants' show and artistic expression. At the very least, there are materially disputed factual issues concerning any such alleged need or purported justification that precluded summary judgment.

## IV. The district court improperly applied the summary judgment standard and improperly acted as a fact finder.

Without any real support, Defendants suggest that this Court should gut its long-established test on the likelihood of confusion to include only two factors—the similarity of the goods or services, and the similarity of the marks. (Def. Br at 38.) While we show below how the record evidence relevant to those factors favor Plaintiffs, this Court has repeatedly held that "all seven factors must be considered." *J-B Weld Co. LLC v. Gorilla Glue Co.,* 978 F.3d 778, 789 (11th Cir. 2020). Indeed, a district court's failure to consider several of these factors has been determined to be reversible error. *Id.* at 795. Rather than the two factors Defendants suggest should be considered, this Court has ruled that the type of mark and actual confusion evidence are the "most important." *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016).

Nor does *Twin Peaks* lend support to Defendants' proposed consideration of only similarity of goods and services and similarity of the marks. In *Twin Peaks*, the Second Circuit remanded the case to the district court to consider the likelihood of confusion factors. 996 F.2d at 1011. In so doing, the circuit court noted that "special consideration" be given to two "complicating considerations" arising from the unique facts of that case only.

### A.  Strength of the mark

The district court correctly found that this factor "cuts in Plaintiffs' favor." (Tab 188 at 16-17.) Plaintiffs' "Flora-Bama" mark is incontestable as a matter of law, so even if it is descriptive, it is "'presumed to be at least descriptive with secondary meaning and therefore a relatively strong mark.'" *Fla. Int'l,* 830 F.2d at 1257 (quoting *Sovereign Order v. Fla. Priory*, 809 F.3d 1171, 1183 (11th Cir. 2015)).

Unlike "Investacorp," *cf. Investacorp, Inc. v. Investment Banking Corp (Investcorp) E.C.*, 931 F.3d 1519 (11th Cir. 1991), "Flora-Bama" does not describe a characteristic or quality of the goods or services Plaintiffs provide such as music, food, or drink. Rather, it was a term Plaintiffs first conceived in 1964 and, prior to Defendants' promotion and distribution of their television show, as the district court observed, "it meant just one thing—the *Flora-Bama*." (Tab 188 at 16–17.) While Defendants cite to certain state incorporation filings, they omit that the record establishes Plaintiffs' successful efforts to prevent third parties from actually

20

using any mark confusingly similar to "Flora-Bama" at all or, at minimum, in a related business—and ignore that actual third-party use is the relevant standard. *PlayNation Play Systems, Inc. v. Velex Corp.*, 924 F.3d 1159, 1166 (11th Cir. 2019); ECF 176-248, Cheely Dec. ¶¶ 2–4.

Despite Defendants' suggestion otherwise, neither a book that was published 20 years after Plaintiffs first started using the mark (and not relied upon by Defendants in their motion below) nor a survey conducted several years after Defendants' show was released (which indicated only 7% believe the term refers to a geographic area) establish that "Flora-Bama" is not a strong mark.

### B.   Similarity of the marks

Contrary to Defendants' contention, the district court actually held that this factor "cuts both ways." In Plaintiffs' favor, the district court observed that the "words Flora-Bama and Floribama are pronounced identically"; in Defendants' favor, the court noted that "the spelling is slightly different, the defendants always add 'Shore' after 'Floribama,' and they usually insert 'MTV' before 'Floribama'" as well as "[t]he graphics are wholly distinct." (Tab 188 at 17.)

That was a bit off the mark. The district court should have held that "shore" is generic, or at best a descriptive geographic term entitled to little consideration. *E.g.*, *John J. Harlan Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 976 (11th Cir. 1983); *Montana Prof. Sports, LLC v. Leisure Sports Mgmt., Inc.*, 422 F. Supp. 2d 1271, 1279

21

(M.D. Fla. 2006) (descriptive geographic terms should be "discounted" when comparing marks' similarity).

"Flora-Bama" or *Floribama* are not descriptive terms, but rather the dominant terms in both marks and titles and therefore the most relevant terms to consider in a similarity analysis. *PlayNation,* 924 F.3d at 1168. Defendants also ignore, as did the district court, that online, "stylization" isn't as relevant. After all, Google ignores fonts and stylization when it does a search; it's just the text that matters, and that text is almost a verbatim copy. And it is online where considerable actual confusion occurred. (*E.g.*, Tab 103-77 at 60-63, 74.)

### C.  Similarity of the parties' goods and services, trade channels and customers

Defendants argue that the parties' goods and services are clearly dissimilar because Plaintiffs do not have a national television show, as determined by the district court. However, both the district court and Defendants overlook that that parties are both in the entertainment business. Not only do Plaintiffs provide live musical entertainment, but film and video of performances at the Flora-Bama Lounge have been depicted in nationally televised shows—*Kenny Chesney Live at the Flora-Bama*—on CMT, one of the same networks that broadcast *Floribama Shore* as well as in movies, documentaries, and streaming internet video. (Tab 103-89 at 4–6; ECF 176-17.)

These days, internet streaming like YouTube, Apple TV, Amazon, and Hulu has converged with traditional network television into one global entertainment medium. Plaintiffs have made clear that they sought to expand their digital video presence into a nationally televised show and were repeatedly solicited for such national shows—*including by Defendant 495*. (Tabs 103-123, 103-125, 103-128, 103-130; ECF 176-18–176-33.) Indeed, 495 solicited Plaintiffs not just for their location, but for a reality television show described as a "workplace docu-series along the lines of *Vanderpump Rules* where [495] can highlight a Southern 'hotspot' and follow the people who work there." (Tab 103-62 at FN2731.)[1]

However appealing these opportunities once were, Plaintiffs can't take them on using their own name any more, because Defendants have "polluted the TV space" and ruined Plaintiffs' "ability to monetize a TV show to the fullest extent possible." (ECF 181-12 (Ex. 45/McInnis Tr. at 296:19-298:8).)[2]

Incredibly, Defendants assert that there "is no evidence" that consumers "would reasonably believe that Plaintiffs expanded into reality television production." (Defs.' Br. 43.) Again, that's not the record; several consumers

---

[1] *Vanderpump Rules* is a reality show set in a restaurant.

[2] Contrary to Defendants' assertion, Plaintiffs did argue precisely these facts below in support of their argument that the parties' goods and services are similar. (Tab 104 at 25-26).

believed that Plaintiffs were affiliated with *Floribama Shore*. (Tabs 103-106 at MGFB41537; 103-11; 103-73 at 51; 103-77 at 3-4, 91, 120, 164; 103-91; 103-92; 103-94; 103-95; 103-96; 103-97; 103-98 at ¶ 2.) Defendants try to distinguish away *Viacom Int'l v. LJR Capital Investments*, LLC, 891 F. 3d 178 (5th Cir. 2018), but the fact remains *Viacom itself* believed, *and a court determined*, that consumers were likely to be confused into erroneously believing that a local restaurant was affiliated with a national television show. Indeed, the fact that Viacom has licensed affiliations between its shows and restaurants serves to underscore the *reasonableness* of consumers' mistaken beliefs that Plaintiffs were affiliated with *Floribama Shore*.

As to customer overlap, Defendants again ignore evidence in the record that show 74% of Plaintiffs' Facebook followers are between 18 to 54, which overlaps substantially with Defendants' core audience for their show of 18 to 49. (*Compare* Doc. 88-24 *with* ECF 176-2, French Dep. 217:14–218:4.)

### D. Defendants' ill intent to misappropriate Plaintiffs' goodwill

Defendants seek to minimize the abundant evidence from which their improper intent to misappropriate Plaintiffs' good will can be reasonably inferred and which the district court erroneously ignored or failed to accord proper weight. In so doing, Defendants incorrectly assert that this Court's decision in *Custom Mfg. & Eng'g v. Midway Servs., Inc.*, 508 F.3d 641, 648 (11th Cir. 2007) is somehow not good law. That is false.

This Court has repeatedly held that intent to misappropriate a plaintiff's good will can be established "solely" through "circumstantial evidence," *J-B Weld Co. LLC v. Gorilla Glue Co.*, 978 F.3d 778, 792 (11th Cir. 2020) (citing *Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833, 843 (11th Cir. 1983)), of a "'conscious intent to capitalize on [the plaintiff's] business reputation'" or that the defendant was "'intentionally blind'" or "otherwise manifested 'improper intent.'" *Custom Mfg.*, 508 F.3d at 648 (quoting *Frehling Enters., Inc. v. Int'l Select Group, Inc.,* 192 F.3d 1330, 1340 (11th Cir. 1999)); *Chanel, Inc. v. Italian Activewear of Fla., Inc.,* 931 F.2d 1472, 1476 (11th Cir. 1991).

Defendants try to escape from Defendant 495's six-year history of soliciting Plaintiffs for a television show, not just as a venue, and try to suggest they played a minimal role in developing the show. Defendants admitted in their brief below, however, that all Defendants "collectively develop, produce and distribute" *Floribama Shore*. (Tab 103–87 at 1.)

Defendants contend there are only "sporadic references" to Plaintiffs among other nightclub venues in their market research for their show. In any event, Defendants' contemporaneous market research establishes that they knew and understood that the "Flora-Bama bar [was] legendary," "famous" and "'Florabama' as a term is either unknown or though[t] to refer strictly to the bar."

(Tab 103-2 at FNF2746, 2750; 103-104 at 27.) Pictures of Plaintiffs' outdoor music venue and "Flora-Bama" branded vehicles appear throughout Defendants' research. (Tab 103-2 at FNF2741, FNF2746-47, FNF2749-50.) Even on their "map" of "Flora-Bama in Detail"—which only shows the area from Gulf Shores to Pensacola and *not* the place where the show was first set—the only establishment specifically identified is the "Flora-Bama Bar." (*Id*. at FNF2744.)

Defendants now try to dismiss damning admissions to the cast members, such as the comment, "I know, I know . . . Floribama is just a bar. Ignore that part for now," Tab 103-11 at FNF3282, Tab 103-55 at 259:8-19, 261:2-262:12, suggesting it was a joke. They also pooh-pooh the aborted plan to install a "Floribama billboard as close as possible to the [Plaintiffs'] bar" (ECF 181-14 (Parkes Tr.) at 154:2-155:6) as just the musing of a junior employee. But this contemporaneous, unguarded evidence speaks much more powerfully than the self-serving testimony of corporate executives trying to evade liability *after* suit is filed. *J-B Weld*, 978 F.3d at 792; *Jellibeans*, 716 F.2d at 843.

Likewise, Defendants' attempt to evade their admission that their Googling of the term "Floribama" only took them to the "Flora-Bama" bar falls flat given Defendants' 30(b)(6) testimonial admission:

Q.    So all you found when you search on Google was my clients'
       establishment, the Flora-Bama; isn't that correct?
. . . .
THE WITNESS: It seems that's true from my email.

(Tab 103-4 at 138:11-17.)

In short, there is abundant evidence of Defendants' intent to misappropriate

Plaintiffs' goodwill. There is also evidence that Defendants attempted to be

intentionally blind of their infringement. Much of this evidence, the district court

improperly ignored and weighed against Plaintiffs.

### E.    Actual confusion

Defendants' arguments fail to rebut that the district court erred by finding this

factor "neutral."

Defendants claim that the eight declarations in the record attesting in detail to

various instances of actual confusion, Tabs 103-91–103-98, should somehow be

disregarded. Defendants had their chance to discover and seek the depositions of

these declarants, and waived it. And they cannot get past *Univ. of Ga. Athletic Ass'n

v. Laite,* 756 F.2d 1535, 1546 (11th Cir. 1985), which held that just *one* affidavit was

persuasive evidence of actual confusion. The fact that all eight declarants attested

to separate and unique incidents of actual confusion should not have been ignored

by the district court. *Id.; Virgin Enters. Ltd v. Nawab*, 335 F.3d 141, 151 (2d Cir.

2003) (finding actual confusion weighed in plaintiff's favor based on one affidavit

attesting to incidents where potential customers asked affiant if defendant's kiosk was affiliated with the plaintiff's stores).

Contrary to Defendants' contention, such purportedly "anecdotal" evidence reflects actual confusion. For example, in *Frehling*, this Court found that the district court erred by assigning little weight to the plaintiff's testimony that a buyer could not understand why plaintiff's sign did not display defendant's trademark. 192 F.3d at 1341. Such testimony was relevant evidence and "at least sufficient to raise an inference of actual confusion." *Id.*

Where actual confusion evidence can give rise to two possible reasonable inferences, the "District Court err[s] by favoring one conclusion over the other on summary judgment because that conclusion was adverse to . . . the non-moving party." *J-B Weld*, 978 F.3d at 793.

While Defendants seek to minimize the abundant social media and internet evidence of actual confusion as mere misspellings, district courts in this Circuit have routinely found social media "messages and posts" "evidence of actual confusion, as they show the . . . social media posters' state of mind." *Canes Bar & Grill of S. Fla., Inc. v. Sandbar Bay, LLC*, 343 F. Supp. 3d 1236, 1245-46 (S.D. Fla. 2018); *You Fit, Inc. v. Pleasanton Fitness, LLC*, No. 8:12-cv-1917-T-27EAJ, 2013 WL 521784, *5 & n.13 (M.D. Fla. Feb. 11, 2013).

Defendants suggest that Plaintiffs' experts who will testify about actual confusion might not be admitted. The district court made no such finding, and in this posture their opinions must be taken as true. Defendants are certainly wrong that Plaintiffs' social media and internet expert admitted not having a basis to offer his opinion, nor did the district court even touch that issue either.

## CONCLUSION

The Court should rule for the Plaintiffs-Appellants, reversing the district court on the First Amendment issue, and instruct that court to continue proceedings.

Dated: April 8, 2022                    Respectfully submitted,


                                         /s/ William F. Cash III
                                        William F. Cash III (Fla. Bar No. 68443)
                                        Troy A. Rafferty (Fla. Bar No. 24120)
                                        Joshua R. Harris (Fla. Bar No. 124124)
                                        **LEVIN, PAPANTONIO, RAFFERTY,**
                                        **PROCTOR, BUCHANAN, O'BRIEN,**
                                        **BARR, & MOUGEY, P.A.**
                                        316 S. Baylen Street #600
                                        Pensacola, FL 32502
                                        Phone: 850-435-7059
                                        bcash@levinlaw.com

                                        Fred H. Perkins (N.Y. Bar No. 1978337)
                                        **MORRISON COHEN LLP**
                                        909 Third Avenue
                                        New York, NY 10022
                                        Phone: 212-735-8647
                                        fhperkins@morrisoncohen.com

                                        *Attorneys for Appellants*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITS**

This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f), this brief contains 6,493 words.

This brief complies with the typeface and type style requirements because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14pt size Equity font.

/s/ William F. Cash III

William F. Cash III

*Attorney for Appellants*

Dated: April 8, 2022